## Paupst *v.* McKendry (et al., Appellant).

Argued September 8, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Howard R. Detweiler,* with him *Ambler & Detweiler,* for appellant.

*Richard J. vanRoden,* for appellees.

Opinion by Ervin, J., November 14, 1958:

The sole question presented on this appeal is whether a motorcycle is a "newly acquired automobile" within the meaning of the term as used in the automobile insurance policy issued to the defendant.

State Farm Mutual Automobile Insurance Company, appellant, issued an automobile accident liability policy agreeing to insure the defendant against liability. At the time the policy was issued, defendant owned a 1950 Ford coupe, which vehicle was so described on the first page of the policy under the heading "Declarations." While said policy was still in effect defendant sold his 1950 Ford coupe and acquired a motorcycle. Six days later an accident occurred wherein minor plaintiff, who was riding as a passenger on the motorcycle owned and operated by the defendant, was injured. Plaintiffs obtained default judgments against the defendant for damages. The insurance company denied coverage on the ground that the policy afforded no protection against liability while defendant was operating a motorcycle. An attachment execution was issued against the company. The above question of law emerged from the interrogatories and answer.

Clause I (1) under "Insuring Agreements" of the automobile insurance policy issued by appellant to defendant provides in part as follows:

"I. Coverages.

Coverages A and B—(A) Bodily Injury Liability and (B) Property Damage Liability.

(1) To pay all damages which the insured shall become legally obligated to pay because of

(A) bodily injury sustained by other persons, and

(B) injury to or destruction of property of others, caused by accident arising out of the ownership, main-

tenance or use, including loading or unloading, of the automobile."

The relative portions of Clause III thereof provide as follows:

"III.   Automobile Defined.

(a) Automobile.   Except where stated to the contrary, the word 'automobile' means:

(1)   Described Automobile—the motor vehicle or trailer described in the declarations;

(2)   Trailer—under coverages A, B, and C, provided the described automobile is not classified as 'commercial,' a trailer not so described if designed for use with a private passenger automobile and if not (a) a passenger trailer, (b) a trailer used for business purposes with another type automobile, or (c) a trailer used as premises for office, store or display purposes.   The insurance does not apply, under coverage C, to a house trailer while used as permanent living quarters.   The word 'trailer' includes semitrailer.

(3)   Temporary Substitute Automobile—under coverage A, B and C, an automobile not owned by the named insured or a member of the same household while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(4)   Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (a) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (b) the named insured or such spouse notifies the company within thirty days following such delivery date.   The named insured

shall pay any additional premium required because of the application of the insurance to such newly acquired automobile.

(b) Equipment. The word 'automobile' also includes under coverages D, E, F and G any equipment permanently attached thereto.

(c) Private Passenger Automobile—means a private passenger, station wagon or jeep type automobile."

Clause IV provided that although the insured was covered by his insurance while operating another automobile, certain of the coverages were limited to private automobiles, as distinguished from public or commercial ones.

In our opinion this case is ruled by *Deardorff v. Continental Life Insurance Co.*, 301 Pa. 179, 151 A. 814. There the policy of insurance insured against death or disability resulting from bodily injuries caused solely by external, violent and accidental means, by the wrecking or disablement of any private automobile, motor driven car or horse-drawn vehicle in which the insured is riding or driving, or by being accidentally thrown from such automobile, car or vehicle. The sole question before the Court was whether a motorcycle was included within the meaning of either an automobile or a motor-driven car. Mr. Justice KEPHART said, at page 181: "An automobile is commonly termed a 'car.' It is so designated in ordinary speech, and the term should not be stressed to meet an unfortunate situation. No one would think of calling a motorcycle an automobile or a car. . . . 'Vehicle' is a much broader term than 'automobile' or 'car.' Under the definition of vehicle a bicycle would be included, so would a motorcycle; but under the definition of car, neither a bicycle nor a motorcycle would be included. . . .

"The same question has been before the courts of other states, and in not a single instance has it been held that a motorcycle was a motor-driven car. See La Porte v. North American Accident Ins. Co., 161 La. 933, 109 So. 767, where the authorities are reviewed; Salo v. North American Accident Ins. Co., 257 Mass. 303, 153 N.E. 557; Perry v. North American Accident Ins. Co., 104 N.J.L. 117, 138 Atl. 894."

Under Clause I liability arose out of the use of an automobile. Under Clause III "automobile" is defined as: "(a) Automobile. Except where stated to the contrary, the word 'automobile' means: (1) Described Automobile—the motor vehicle or trailer described in the declarations; . . . ." Clause III(a), subsection (1) clearly indicates that the policy was not intended to cover automobiles in a broad generic sense, but only that type of automobile which is described in the declarations, in this case a Ford coupe. Subsection (2) specifically broadens the definition to include noncommercial type trailers which are used with noncommercial type automobiles. There was no intention to further broaden the definition of an automobile. Subsection (1) cannot, as the court below concludes, be construed to include motorcycles simply because it refers to "the motor vehicle or trailer described in the declarations." The words "motor vehicle" cannot be taken out of context to apply the argument that a general class has been referred to which would include motorcycles. The words "motor vehicle" must be read in conjunction with the other words in the same sentence, viz., the "automobile" which is "described in the declarations." There would have been little purpose in defining an automobile as "an automobile described in the declarations"; it is certainly a motor vehicle. Had the policy covered damage to grapes which were defined as "fruit growing on a vine," it

could not be contended that the policy also covered apples simply because the word "fruit" was mentioned in the definition.

The court below seemed to feel that this case was ruled by *Koser v. American Casualty Co.,* 162 Pa. Superior Ct. 63, 56 A. 2d 301. In that case the policy specifically excluded "motorcycle or any vehicle or mechanical device for aerial navigation" from the term "automobile."

Because of this exclusion our Court applied the maxim *expressio unius est exclusio alterius* and found that because a tractor was not specifically excluded it was covered by implication in the term "automobile." This, however, is quite a different situation from that which appears in the instant policy, where "automobile" is used throughout alone, except for Clause III (c) which is a separate clause defining a "private passenger automobile" for the specific purpose of supplementing certain of the policy provisions relating to trailers and commercial type automobiles.

The definition of a "private passenger automobile" was made necessary only because of the inclusion of that term in Clause III, paragraph (a) (2) relating to trailers, and also in Clause IV, paragraphs (b) and (c) relating to coverage while using other automobiles.

A trailer would not normally be considered to be an automobile. Clause III (a) (2) specifically stated that certain types of trailers would be covered by the policy. However, it limited coverage to noncommercial type trailers attached to noncommercial or "private passenger automobiles." A definition of this term was, therefore, necessary.

The definition of a "private passenger automobile" is in no way connected with the general definition of an automobile found in Clause III(a). The maxim of *expressio unius* is not applicable.

In the present case there was no similar clause of exclusion. For the reasons above set forth the use of the words "motor vehicle" in the definition of an automobile in Clause III (a) (1), and the definition of a "private passenger automobile" in Clause III (c), do not expand the term "automobile" from its ordinary and popular sense to its generic sense so as to include a motorcycle.

The definition of an automobile in Funk & Wagnall's Standard Dictionary, 1935 ed., Vol. 1, is "a self-propelling four-wheeled vehicle."

A motorcycle, on the other hand, is defined simply as "a cycle, as a bicycle or tricycle, propelled by a motor." The definition also mentions that in Great Britain the term is limited by statute to "motor-cars having not more than three wheels, etc." The Vehicle Code, Act of May 1, 1929, P. L. 905, as amended, 75 PS §2,[1] includes a motorcycle in its definition of "motor vehicle." The word "automobile" is not defined by The Vehicle Code.

Mr. Justice (later Chief Justice) KEPHART, at page 182 of the *Deardorff* case, supra, clearly demonstrates why a motorcycle cannot be included in the commonly understood definition of an automobile: "A motorcycle is an instrument of danger on the highway, even more so than an automobile. It is dangerous to the public at large, but the special danger is to the driver of the motorcycle itself. . . . Motorcycles on the highway are constantly dodging in and about cars, subjecting both to great risks. Because of the accidents attributed to

---

[1] " 'Motorcycle'.—Every motor vehicle having a saddle for the use of riders and designed to travel on not more than three wheels in contact with the ground, bicycles with motor attached, scooter and toy automobiles which are self-propelled by an engine not exceeding four (4) horsepower, except any such vehicle as may be included within the term 'tractor'."

motorcycles they are frequently termed a common nuisance. There is greater danger connected with the operation of a motorcycle than any other self-propelled, power-driven vehicle. The insurance company no doubt had this in mind, and, because of the definite difference in risk, there is no reason to believe they were intended to be included within any of the insured classifications made by this policy."

Since there really is no ambiguity in the present policy, the rule of construction which produces a meaning most favorable to the insured has no application.

The word "automobile" has a fairly well understood meaning to the average person. As Mr. Justice KEPHART said: "No one would think of calling a motorcycle an automobile. . . ."

The majority view outside of Pennsylvania is that a motorcycle is not an automobile. 38 A.L.R. 2d 882.

While the principle *expressio unius est exclusio alterius* is well recognized, one must indulge in rather fancy reasoning in order to expand the commonly understood word *"automobile"* to the point that it will include a *farm tractor* merely by saying that the word "automobile" is not to include a *motorcycle* or any vehicle or mechanical device for aerial navigation. While our Court accomplished this result in the *Koser* case, we are unwilling to extend the reasoning to embrace the facts in the present case. After all, we are merely endeavoring to ascertain what the parties meant by their writing. We do not believe that they intended to insure the liability of defendant to others when operating a motorcycle when they used the word "automobile."

The mere fact that an additional premium could be charged when an automobile was newly acquired has no real relation to the present problem. An examination of the policy reveals that it could be used to

provide collision insurance as well as fire and theft insurance. The premiums for such coverages are naturally dependent upon the cost of the automobile.

Judgments reversed and here entered for appellant.