**Barca v. Prudential Insurance Company of America**

*P. Raymond Bartholomew,* for plaintiff.

*George H. Rowley,* for defendant.

ACKER, J., March 30, 1970.—This action in assumpsit has been tried nonjury. The verdict is in favor of defendant.

## FINDINGS OF FACT

1. Plaintiff, Dean M. Barca, is an employe of Sharon Steel Corporation and was continuously from 1963 through 1969, being the period in issue in this case.

2. As an employe of Sharon Steel Corporation, plaintiff and his wife, Fay A. Barca, were entitled to the benefits of Certificate No. 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 with the Prudential Insurance Company of America.

3. In 1963, Fay A. Barca was under the care and treatment of Dr. Robert W. Monroe, a physician of Greenville, Pa., who referred her to Dr. Harold Sprinzen, a clinical psychologist, who is not a medical doctor, for services of a nature which Dr. Monroe was not qualified to perform. The first charge for Dr. Sprinzen's services was November 20, 1964, and continued through June 28, 1969, in the total amount of $3,450.

4. In early 1965, plaintiff appeared at the office of Sharon Steel Corporation, which processed the insurance claims for its employes with the Prudential Insurance Company of America and talked with a female employe of Sharon Steel, one Carol Howell, He inquired of her whether the psychological services of Dr. Sprinzen would be covered under his policy for services rendered in the years of 1964 and 1965. The employe answered "no."

5. In early 1966, plaintiffs submitted to the office which processes the insurance claims of Sharon Steel Corporation a written statement of the services rendered for Fay A. Barca by Dr. Sprinzen.

6. Plaintiff waited for an approximate 60-day period and then talked with Mr. Alvin L. Maxwell, who had been in charge of the insurance program at Sharon Steel since 1942. Mr. Maxwell informed plaintiff that there was, in fact, no insurance coverage because Dr. Sprinzen was not a medical doctor.

7. In the early part of 1968, plaintiff again submitted his claim through the Sharon Steel Corporation insurance office along with a letter from Dr. Monroe. Plaintiff did not receive a reply until he received a letter later in 1968 by the Sharon Steel Insurance Court denying the claim.

Although defendant has raised various defenses concerning a statute of limitations established by the policy, type of written notice to be given and the time when the notice must be submitted, the primary issue is whether or not there is any payment authorized under this policy for the services rendered by Dr. Sprinzen to the plaintiff's wife, Fay A. Barca.

Under definition in the policy "The term 'physician' means a physician or surgeon licensed to practice medicine and perform surgery, or a duly licensed dentist or a podiatrist practicing within the scope of his profession."

The policy provides that the insurance company will pay to the employe benefits equal to 80 percent of the amount, if any, by which the total eligible charges incurred during each calendar year in connection with the illness of the employe or a qualified dependent, and while such person is a covered individual, exceeds the deductible applicable to the covered individual for the benefit year. Eligible charges are those of a list set forth in the policy ordered by a physician. Among these items are "physician's services for medical care and treatment and surgery." The type of services specifically listed which are not rendered

by a physician are for speech therapy, professional nursing, oxygen, x-rays, radium treatments, physiotherapist and ambulance service.

All services rendered by a physician are not covered. This is learned by reading the "Exceptions." For example, charges with several exceptions incurred in connection with pregnancy or resulting childbirth, abortion or miscarriage, physician's services in connection with a mouth condition or weak, strained or flat feet, corns, callouses or toenails are excluded.

Therefore, it is apparent that a clinical psychologist's services are simply not included. Plaintiff answers, however, that the policy does make specific provision for mental illness by providing that, "In the case of eligible charges incurred in connection with mental illness or functional nervous disorders of any type, or cause of any person who is a covered individual, other than charges incurred during hospital confinement of the covered individual for which a room and board charge is made, and other than charges incurred in connection with the administration of convulsive therapy, the percentage set forth in the first paragraph of this section 'benefits' shall be fifty per cent instead of the figure set forth therein. Further, that under the provision of illness, mental infirmity is included."

It is apparent, therefore, that even though mental illness or nervous disorders are provided for at the rate of 50 percent, they must be within the definition of eligible charges. There is no claim that the beneficiary, Fay Barca, was hospitalized during the period now claimed for treatment by the clinical psychologist. What services would be rendered than to a victim of mental illness under the term "eligible charges"? Obviously physician's services, but also it would appear professional nursing services, local ambulance service, drugs and medicines dispensed by a licensed

pharmacist, rental of a wheel chair or a hospital bed are included.

But defendant claims that because Dr. Monroe referred Mrs. Barca to Dr. Sprinzen, those services rendered by Dr. Sprinzen are really the same as if being administered by Dr. Monroe for the purpose of this policy. There was no evidence that Dr. Monroe had under his direction the manner of performance of services by Dr. Sprinzen.

Plaintiff cites a group of general rules of construction concerning insurance policies which he feels controls the determination of this case. He contends that if there is any ambiguity in a contract of insurance it must be resolved in favor of the insured.[1]

A reading of the contract, however, does not disclose that there is any ambiguity. Plaintiff also contends that the rule that an insurance policy will be construed liberally in favor of the insured and strictly against the insurer is applicable in this case where the insurer relies upon exceptions to or limitations upon coverage.[2] However, in this case, defendant does not rely upon *exceptions or limitations to coverage.* Likewise, the rule that in interpreting an insurance contract the court must give effect to all provisions in the contract.[3] In the interpretation of

---

[1] Miller v. Boston Insurance Company, 420 Pa. 566, 218 A. 2d 275 (1966); Sykes v. Nationwide Mutual Insurance Company, 413 Pa. 640, 198 A. 2d 844 (1964); Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582, 152 A. 2d 484 (1959); Sack v. Glens Falls Insurance Company, 356 Pa. 487, 52 A. 2d 173 (1947).

[2] Vowinckel v. Donegal Mutual Insurance Company, 201 Pa. Superior Ct. 229, 191 A. 2d 706 (1963); Armon v. Aetna Casualty and Surety Company, 369 Pa. 465, 87 A. 2d 302 (1952); Simon v. Hospital Service Asso. of Pittsburgh, 192 Pa. Superior Ct. 68, 159 A. 2d 52 (1960).

[3] Sykes v. Nationwide Mutual Insurance Company, supra, footnote one; Breen v. Rhode Island Insurance Company, 352 Pa. 217, 42 A. 2d 556 (1945).

this contract, the court has given effect to all provisions of the contract. Defendant contends that if the language employed in the policy would lend itself to either of two reasonably consistent interpretations that construction which permits recovery will be preferred over the one which would deny coverage.[4] We agree with this proposition of law, but do not believe that there are two reasonably consistent interpretations. And lastly, a defense based upon an exception or an exclusion in an insurance policy is an affirmative one and the burden is upon the insurer to establish it.[5] We agree with this proposition of law, but do not believe that the denial of recovery is based on an exception or an exclusion. Rather, it is based on the failure of the policy to include coverage for plaintiff.

All of the authorities cited by plaintiff have been examined. None of them discussed the question here involved and are found to be inapposite.

Finally, plaintiff cites United States v. Riggleman, 411 F. 2d 1190 (4th Cir., 1969), which permitted a clinical psychologist to state an opinion on the question of defendant's mental state at the time of the commission of a robbery. He sought a new trial on the grounds that only a psychiatrist should be permitted to testify in this question. This was refused, the circuit court observing that a clinical psychologist and psychiatrist are equally competent to render an expert opinion. It is difficult to conceive how this case renders

---

[4] Blue Anchor Overall Co. v. Pennsylvania Lumbermen's Mutual Company, 385 Pa. 394, 123 A. 2d 413 (1956); Armon v. Aetna Casualty and Surety Company, supra, footnote two; Snader v. London & Lancashire Indemnity Company of America, 360 Pa. 548, 62 A. 2d 835 (1949); Dzurko v. Pilot Life Insurance Company, 195 Pa. Superior Ct. 267, 171 A. 2d 885 (1961).

[5] Armon v. Aetna Casualty and Surety Company, supra, footnote two; Miller v. Boston Insurance Company, supra, footnote one.

any assistance to plaintiff. The insurance policy specifically requires that the services be rendered under the care and treatment of a physician, which means a physician or surgeon licensed to practice medicine and perform surgery. Although a psychologist may be even better qualified to render the specific services involved in this case, this does not in any way bind the insurance company to payment for such services.

## CONCLUSIONS OF LAW

The services of the psychologist for psychological services to Fay A. Barca are not within the terms and conditions of the insurance policy of defendant in this case.

Wherefore, the verdict of this court is in favor of defendant.

## ORDER

And now, March 30, 1970, a verdict is found in favor of defendant, The Prudential Insurance Company of America, and against plaintiff, Dean M. Barca, and is hereby entered with directions to the prothonotary to file the same and enter it upon the records of this court.