FRANKLIN HARRIS AND GEORGIANA HARRIS,
PLAINTIFFS, v. MARIE OSORIO, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided November 15, 1973.

*Mr. Milton D. Liebowitz,* attorney for Plaintiffs.

*Mr. Anthony C. Stuart,* attorney for Defendant.

MORRISON, W. R. J. D. C., Temporarily Assigned. This is a motion for summary judgment brought by defendant to dismiss the complaint on the ground that the provisions of *N. J. S. A.* 39:6A–8 bar plaintiffs' action by reason of the fact that their "medical expenses," as defined therein, did not exceed $200.

There is no dispute as to the facts. Plaintiff Franklin Harris was injured in an automobile accident which occurred on January 3, 1973. He received soft tissue injuries and was confined to the Pascack Valley Hospital for six days, for which the bill was $472.50. While in the hospital he received treatment from Dr. Chasan, whose bill was $85. Dr. Chasan requested that a neurosurgeon examine plaintiff in the hospital, by reason of the plaintiff's complaints of numbness in his left arm. Dr. Pillone, the neurosurgeon who examined plaintiff on two occasions in the hospital, rendered his report to Dr. Chasan. The report stated that there was no indication of neurological damage. Dr. Pillone's bill was $125. Subsequent to plaintiff's hospital confinement Dr. Chasan continued to treat him for which an additional charge of $67 was incurred.

It is agreed that the $472.50 hospital bill is not one of the "medical expenses" that can be considered in attempting to reach the $200 threshold of tort liability. As a "hospital expense," it is specifically excluded. Likewise, it is agreed that the charges of the treating physician, Dr. Chasan, for both the in-hospital treatment ($85) and the out-patient treatment ($67) can be considered as "medical expenses," included under the statute for purposes of reaching the $200 threshold.

The sharp issue presented by this motion is whether the neurosurgeon's examinations, for which he charged $125, are to be considered as "treatment," in which case the costs therefor would be deemed a "medical expense" as defined in *N. J. S. A.* 39:6A–2(e) ; or, are the examinations to be considered as "diagnosis," in which case the costs therefor would be deemed *"diagnostic* medical expenses," not included for purposes of reaching the $200 threshold?

A search of New Jersey cases fails to reveal any decision interpreting this new statute or the words "diagnostic" or "treatment" as used therein. Reference to out-of-state cases has turned up but one case which appears to be substantially in point. In *Simon v. Hospital Service Association of Pennsylvania,* 192 *Pa. Super.* 68, 159 *A.* 2d 52 (Super. Ct. 1960), the court was faced with interpreting a Blue Cross hospitalization policy very similar in wording to the statute involved in the case at bar. The insurance company was to pay for "the treatment and care of all illness and injuries regularly accepted for treatment by the Member Hospital selected by the Subscriber," but not for "admissions of patients to Member Hospitals for: a. Diagnosis or for laboratory or x-ray studies solely for diagnosis purposes."

In *Simon* plaintiff was hospitalized for acute abdominal pain on the order of her physician. She was at the hospital for 13 days, after which she was discharged, *fully recovered.* [*Ibid*] During her stay at the hospital plaintiff received * * * certain treatment consisting of therapeutic measures, bed rest, controlled light diet, analgesics, barbiturates, enemas, Nupercainal ointments, a saline douche, application of hot water bottles, in addition to electrocardiogram, cholecystegram, and x-rays of various types. These were either prescribed, recommended or administered by Dr. Stutz (her physician) and the hospital physicians assigned to the plaintiff. It is also a fact that following the application of all these measures plaintiff did recover from her illness, and was released from the hospital and the doctors

care. The court in *Simon* allowed the plaintiff to recover for *all* her hospital expenses, even though some of the expenses were solely for diagnostic purposes. The court reasoned that when treatment is combined with various diagnostic tests as part of an overall scheme of treatment, it would be improper to exclude those diagnostic test expenses from coverage under the policy.

> That the physicians had to limit their treatment and extend diagnostic examination over a long period of time because they could not determine the specific cause of her illness, does not alter the fact that she was admitted to the hospital because she was in need of treatment and care. When she entered the hospital, she was "sick in bed"; when she left, she had recovered. She was not an ambulatory patient admitted for what is generally termed, in layman's language, "a check-up."
>
> As nearly all hospital patients require diagnostic tests along with therapeutic treatment, the exception contained in the agreement must relate only to patients who are admitted for diagnosis as distinguished from therapeutic treatment and care. It is an exception to the expressed liability contained in an agreement written by the appellant and, if there be an ambiguity in it, must be taken most strongly against the hospital association. If it is reasonably susceptible of two interpretations, it is to be construed in favor of the assureds so as not to defeat, without plain necessity, their claim to indemnity which it was their object to secure. *Reynolds v. Maryland Casualty Co.*, 1906, 30 *Pa. Super.* 456; *Nusbaum v. Hartford Fire Insurance Co.*, 1923, 276 *Pa.* 526, 120 *A.* 481.

In the instant case plaintiff, as in *Simon,* received certain diagnostic examinations by the neurosurgeon while in the hospital, that were part of the overall scheme of treatment. *Black's Law Dictionary* (4th ed., 1968) defines "treatment" as "a broad term covering all the steps taken to effect a cure of an injury or disease; *the word including examination and diagnosis* as well as application of remedies." (Emphasis added). The no-fault aspect of the statute in question is in derogation of the common-law, and as such is to be strictly construed — much as the insurance contract in *Simon* was strictly construed against the insurer. A strict construction of the phrase "diagnostic medical expenses" would therefore

necessitate the implicit insertion of the word "solely" before "diagnostic." To do otherwise would mean that any service performed by any physician short of *actually doing something* to the patient would have to be considered "diagnostic." That would mean that if a person visited a physician for a headache resulting from an auto accident, and the physician took his temperature, checked his heartbeat, tapped his lungs, looked at his tongue, felt his head and gave him two aspirins, that everything except the giving of the two aspirins was "diagnostic," and not counting toward the $200 minimum. The Legislature surely did not intend such a result.

The court therefore holds as a matter of law that where medical expenses are solely and purely diagnostic, not related to any ongoing treatment, they are not to be considered as going towards the $200 minimum required by *N. J. S. A.* 39:6A–8. But where diagnostic procedures are inseparably interwined with an overall scheme of treatment, the costs of such procedures are to be considered as "medical expenses" not excluded by the phrase "diagnostic medical expenses" from computation toward the $200 threshold.

Dr. Pillone's bill of $125 is therefore to be considered a "medical expense" not excluded as "diagnostic," because his service was part of the overall scheme of treatment. The result is consonant with the holding in *Simon, supra,* where several diagnostic tests administered in the course of treatment were considered as not coming within the purview of said exclusionary phrase.

For the above reasons defendant's motion to dismiss the complaint is denied.