136 N.J. Super. 255 (1975)
345 A.2d 385
MARY EMMA, PLAINTIFF,
v.
JOSEPH R. ROMANO, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided September 11, 1975.
*256 Mr. Joseph P. Perfilio for plaintiff (Messrs. Perfilio & Marquet, attorneys).
Mr. Brian J. Coyle for defendant (Messrs. Wulster, Lloyd & Ryan, attorneys).
BILDER, J.S.C.
This matter arises out of a rear-end automobile accident in which plaintiff passenger in the front car alleges she was injured as a result of the negligence of the driver of the rear car. Defendant, in addition to his denial of negligence, has asserted as a separate defense that plaintiff's injuries were confined to the soft tissue and her medical expenses were less than $200, the threshold established under our No Fault Act, thus barring her claim pursuant to N.J.S.A. 39:6A-8.
It appears from the uncontroverted affidavits that the accident occurred when the car in which plaintiff was riding was struck in the rear when it stopped at an intersection to yield the right of way to an emergency vehicle traveling on the intersecting street.
Plaintiff brings a motion for summary judgment as to the issue of liability, arguing that there is no genuine issue as to the negligence of the defendant. Plaintiff has joined *257 this with a motion to strike the separate defense, and defendant has brought a cross-motion for summary judgment on the basis of the same defense. All of the relevant facts have been stipulated with respect to the question of whether the statutory threshold has been met.
Plaintiff suffered soft tissue injuries to her left index finger and back. The accident occurred on November 18, 1974.
Initially she was seen by a doctor who rendered a bill of $55. This doctor treated her for the injuries to her finger from November 19, 1974 until he discharged her December 18, 1974. His bill was for four office visits, each of which encompassed treatment.
Thereafter, on January 3, 1975 she was seen by an orthopedic surgeon who rendered a bill for $160. His bill included $125 for three office visits and four physiotherapy treatments. There was in addition a $35 charge for an X-ray of the lumbosacral spine taken on the occasion of the first office visit.
Thus plaintiff's bills without the X-ray charge total $180  less than the threshold provided by N.J.S.A. 39:6A-8. With the X-ray charge included plaintiff's bills exceed $200 and her claim is not barred.
Plaintiff argues that the statute does not exclude X-rays from the medical expenses unless solely diagnostic. It is her contention that the X-ray in this case, although diagnostic, should be considered as part of the doctor's ongoing treatment and included within the threshold amount, citing Harris v. Osorio, 125 N.J. Super. 463 (Law Div. 1973), supplemented 125 N.J. Super. 468 (Law Div. 1973). She does not contend the X-ray was given as therapy.
N.J.S.A. 39:6A-8, a part of the New Jersey Automobile Reparation Reform Act  more commonly known as our No-Fault Act  provides as follows:
Every owner, registrant, operator or occupant of an automobile to which section 4, personal injury protection coverage, regardless of *258 fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for damages to any person who is required to maintain the coverage mandated by this act, or to any person who has a right to receive benefits under section 4 of this act as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State, if the bodily injury, is confined solely to the soft tissue of the body and the medical expenses incurred or to be incurred by such injured person or the equivalent value thereof for the reasonable and necessary treatment of such bodily injury, is less than $200.00, exclusive of hospital expenses, X-rays and other diagnostic medical expenses. There shall be no exemption from tort liability if the injured party has sustained death, permanent disability, permanent significant disfigurement, permanent loss of any bodily function or loss of a body member in whole or in part, regardless of the right of any person to receive benefits under section 4 of this act. Bodily injury confined solely to the soft tissue, for the purpose of this section means, injury in the form of sprains, strains, contusions, lacerations, bruises, hematomas, cuts, abrasions, scrapes, scratches, and tears confined to the muscles, tendons, ligaments, cartilages, nerves, fibers, veins, arteries and skin of the human body.
This section is the exemption provision by which the Legislature sought to exclude cases which it felt should be below the threshold of legal response (other than the no-fault concept which assures immediate reimbursement of actual out-of-pocket expenses). It defined this excluded group as soft tissue injuries where the costs of treatment are less than $200. Recognizing the rapid escalation of expenses inherent in hospitalization and in X-ray and other diagnostic medical procedures, it excluded these costs from the yardstick it chose  the $200 medical treatment threshold. The X-ray expense in the instant case was incurred for diagnostic purposes; it was not used therapeutically. Its exclusion is mandated by the plain language of the act.
In construing this act it is important to recognize what the Legislature has sought to accomplish. What the Legislature sought was to segregate out of our legal system negligence claims for pain and suffering arising from soft tissue injuries, the nature and extent of which were such as not to require at least $200 in treatment and thus were, in the Legislature's view, not sufficiently severe to warrant legal *259 redress. This intention of the Legislature should be given effect.
They have not sought to limit the use of X-rays, diagnostic tests or consultations, or to place any constraints on hospitalization. Indeed, to the contrary, by providing for the prompt payment of these expenses regardless of fault they have encouraged prompt and adequate medical care.
The propriety of the X-ray procedure for plaintiff is not questioned. Its propriety, as with any other diagnostic procedure, lies with the physician. Nor is no-fault coverage of the expense questioned. The question is solely whether plaintiff shall be permitted to recover for the pain and suffering which she alleges accompanied her soft tissue injuries. As previously noted, the exclusion of the X-ray expense is mandated by the statute and her claim for pain and suffering is barred.
To the extent this opinion conflicts with Harris v. Osorio, supra, this court respectfully disagrees with that case. When viewed in the light of the legislative purpose and the overall scheme of the no-fault concept, diagnostic consultations would seem to be clearly within the excluded expenses of N.J.S.A. 39:6A-8.
Simon v. Hospital Service Ass'n of Pittsburgh, 192 Pa. Super. 68, 159 A.2d 52 (Super. Ct. 1960), upon which Harris relies, is a case involving the interpretation of a hospitalization policy and is inapposite. The question in Simon was whether Blue Cross policy covered a hospitalization in which the patient was admitted for treatment but in which a large part of the care consisted of diagnostic procedures. Medical insurance is intended to relieve the financial burdens of illness and should be liberally construed to achieve that end. Strict construction which denies reimbursement of out-of-pocket expenses for necessary care  including diagnostic consultations  would be a limitation on the insured's reasonable expectations and indeed, as a practical matter, upon the practice of medicine. With respect *260 to the no-fault exemption, however, strict construction limits claims for pain and suffering in minor automobile accidents and reduces litigation  the avowed legislative purposes.
Defendant's motion for summary judgment is granted and plaintiff's motions are denied.